**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BREAD FOR THE CITY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 15-1591 (RJL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF AGRICULTURE *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

FILED
SEP 30 2016
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

**MEMORANDUM OPINION**

(September 30, 2016) [Dkt. # 14]

Plaintiff Bread for the City, Inc. ("Bread for the City" or "plaintiff") brings this action against defendants the U.S. Department of Agriculture, Secretary of Agriculture Thomas J. Vilsack, and the Food and Nutrition Service (collectively, "USDA" or "defendants"). In its Complaint, Bread for the City asserts that USDA misinterpreted the clear command of 7 U.S.C. § 2036(a)(2) and, as a result, failed in fiscal year 2015 to purchase and distribute more than $277 million worth of food required by Congress as part of The Emergency Food Assistance Program ("TEFAP"). Compl. [Dkt. # 1].

Currently before the Court is USDA's Motion to Dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. [Dkt. #14]. For the reasons stated below, the Court rejects Bread for the City's asserted legal theory and GRANTS defendants' Motion to Dismiss the Complaint.

## BACKGROUND

In 1983, Congress created The Emergency Food Assistance Program ("TEFAP") to provide free nutrition assistance to low-income Americans. Emergency Food Assistance Act of 1983, Pub. L. 98–8, 97 Stat. 35 (1983). Under the program, USDA purchases food with appropriated funds and distributes it to eligible state agencies, who in turn must distribute a portion of the food to public or non-profit "emergency feeding organizations." 7 U.S.C. §§ 7501–02; 7 U.S.C. § 2036(a).

Bread for the City is a non-profit organization that distributes food to low-income residents in the Washington, D.C. area. Compl. ¶ 5. According to its Complaint, Bread for the City has participated in TEFAP for at least twenty years and has in previous years received a significant portion of the food that USDA distributed to the District of Columbia as part of TEFAP. *Id.* ¶ 30.

In 2014, Congress passed the Agricultural Act of 2014, which reauthorized TEFAP and established its spending levels for future fiscal years. Agricultural Act of 2014, Pub. L. 113-79; § 4027, 128 Stat. 649, 812–13 (2014) (codified at 7 U.S.C. § 2036(a)). Based on its interpretation of the statute, USDA purchased and distributed $327 million worth of TEFAP food in fiscal year 2015. Compl. ¶ 33; Mem in Supp. of Defs.' Mot. to Dismiss at 4 [Dkt. # 14-1.] Bread for the City asserts that USDA misinterpreted the statute, and argues that the agency was required to purchase and distribute $604 million worth of food in fiscal year 2015. Compl. ¶ 1. Bread for the City filed its Complaint in September 2015, seeking to compel USDA to spend the additional $277 million and to comply with Bread for the City's interpretation of the statute in

future fiscal years.

**STANDARD OF REVIEW**

USDA moves to dismiss Bread for the City's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction over the plaintiff's claims, while a Rule 12(b)(6) motion challenges the sufficiency of a complaint.

When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the facts that support jurisdiction by a preponderance of the evidence. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Furthermore, since subject matter jurisdiction is a statutory and a constitutional Article III requirement that cannot be waived by litigants, *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Circ. 2003), the Court must independently satisfy itself that it has jurisdiction to hear the plaintiff's claims. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must ascertain whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Although the Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007), the Court is not required to accept legal conclusions cast in the form of factual assertions, *Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002), and a claim that is premised on a faulty legal theory must be dismissed, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). For the following reasons, the Court rejects defendants' jurisdiction motion but agrees with its Rule 12(b)(6) argument.

## ANALYSIS

### I. The Court has subject matter jurisdiction over Bread for the City's challenge to TEFAP spending in 2015.

Whether the Court has jurisdiction over Bread for the City's claims, at least insofar as they relate to USDA's TEFAP spending in fiscal year 2015, is to say the least, not a close question.[1] Indeed, because Bread for the City is challenging USDA's interpretation of 7 U.S.C. § 2036(a)(2) and seeks declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 701, the Mandamus Act, 28 U.S.C § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2202, this Court is explicitly endowed with subject matter jurisdiction over this Complaint. 28 U.S.C. § 1331 (granting district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties

[1] USDA's jurisdictional argument in support of its Rule 12(b)(1) motion is focused on Bread for the City's request for *prospective* relief. According to USDA, any request for relief connected to future fiscal years relies on assumptions about future congressional appropriations and agency conduct that are too speculative to create a justiciable case or controversy. Mem. In Supp. Of Defs.' Mot. to Dismiss, at 17–21 [Dkt. # 14-1]; Defs.' Reply Mem. in Supp. of Defs.' Mot. to Dismss at 12–15 [Dkt. # 16]. I make no decision about the justiciability of Bread for the City's claims for prospective relief. Bread for the City's right to *any* relief, prospective or not, turns on whether its interpretation of 7 U.S.C. § 2036(a) is correct. Because the Court has subject matter jurisdiction over Bread for the City's claim as it relates to 2015, and must therefore resolve the underlying legal question, I need not address the ripeness questions posed by prospective relief unless and until I find that Bread for the City's underlying legal theory is correct and that the organization has in fact stated a claim upon which relief can be granted.

of the United States"); 28 U.S.C § 1361 (granting district courts jurisdiction over federal mandamus actions).

Furthermore, I easily conclude that Bread for the City has alleged sufficient facts to establish standing. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("In order to establish jurisdiction, a party must establish standing."). Indeed, in order to establish standing at the motion to dismiss stage, the plaintiff need only "state a plausible claim that [it has] suffered an injury in fact fairly traceable to the action of the defendant that is likely to be redressed by a favorable decision on the merits." *Id.* at 913. Here, Bread for the City alleges that it has participated in TEFAP for at least 20 years, that it has received a significant portion of the TEFAP food allocated to Washington, D.C. in prior years, and that it would have likely received a higher allocation of food if USDA had purchased the $604 million worth of food it believes the statute required. Compl. ¶¶ 5, 30. In effect, Bread for the City alleges that USDA's failure to distribute the correct amount of food to states (and the District of Columbia) caused the organization to receive less food than it likely would have, and seeks an order directing USDA to purchase the correct amount of food. Thus, based on these allegations alone, I find that Bread for the City has the standing necessary to challenge USDA's 2015 TEFAP spending. *See West Virginia Assoc. of Cmty. Health Ctrs. v. Heckler*, 734 F.2d 1570, 1572 (D.C. Cir. 1984) (holding that nonprofit entities had standing to challenge federal agency's formula for distributing grants to state agencies, who in turn distributed grant funds to non-profit organizations, on the grounds that plaintiff organizations had been denied the opportunity to compete for additional funding).

**II. Bread for the City's Complaint raises a purely legal question that should be resolved at the motion to dismiss stage and in favor of the defendants.**

Ordinarily, a motion for summary judgment, rather than a Rule 12(b)(6) motion to dismiss, is the "proper [procedural] mechanism for deciding as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *R.J. Reynolds Tobacco Co. v. USDA*, 130 F. Supp. 3d 356, 369 (D.D.C. 2015). However, Bread for the City's Complaint raises a purely legal question—whether the text of 7 U.S.C. § 2036(a)(2)[2] required USDA to purchase more food than it did in fiscal year 2015. Furthermore, USDA has declined to file the administrative record with the Court, and its motion relies on nothing "other than the statute and relevant

---

[2] The relevant language reads:

**(1)** **In general.**—From amounts made available to carry out this chapter, for each of the fiscal years 2014 through 2018, the Secretary shall purchase a dollar amount described in paragraph (2) of a variety of nutritious and useful commodities . . . and distribute the commodities to States for distribution . . . .

**(2)** **Amounts.**—The Secretary shall use to carry out paragraph (1)—

- **(A)** for fiscal year 2008, $190,000,000;
- **(B)** for fiscal year 2009, $250,000,000;
- **(C)** for each of fiscal years 2010 through 2018, the dollar amount of commodities specified in subparagraph (B) adjusted by the percentage by which the thrifty food plan has been adjusted under section 2012(u)(4) of this title between June 30, 2008, and June 30 of the immediately preceding fiscal year;
- **(D)** for each of fiscal years 2015 through 2018, the sum obtained by adding the total dollar amount of commodities specified in subparagraph (C) and—
  - **(i)** for fiscal year 2015, $50,000,000;
  - **(ii)** for fiscal year 2016, $40,000,000;
  - **(iii)** for fiscal year 2017, $20,000,000; and
  - **(iv)** for fiscal year 2018, $15,000,000; and
- **(E)** for fiscal year 2019 and each subsequent fiscal year, the total dollar amount of commodities specified in subparagraph (D)(iv) adjusted by the percentage by which the thrifty food plan has been adjusted under section 2012(u)(4) of this title to reflect changes between June 30, 2017, and June 30 of the immediately preceding fiscal year.

7 U.S.C. § 2036(a).

legislative history." Defs.' Mem. in Supp. of Mot. to Dismiss at 1 n.1. Under these circumstances, it is procedurally permissible, and appropriate, to resolve the merits of Bread for the City's APA challenge at this early stage in the proceedings. *Am. Bankers' Assoc. v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001) (affirming Rule 12(b)(6) dismissal of complaint where district could resolve APA challenge "with nothing more than the statute and its legislative history"); *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage.").

## I. Bread for the City's Complaint fails to state a claim upon which relief can be granted.

Bread for the City and USDA disagree about the proper interpretation of § 2036(a)(2)'s spending schedule and calculate wildly divergent TEFAP totals for 2015 through 2018. For the reasons stated below, I have concluded that USDA's interpretation of the statute is correct, that the agency was *not* required to spend an additional $277 million in 2015, and that Bread for the City's Complaint must be dismissed for failure to state a claim upon which relief can be granted.

### A. USDA's Interpretation: $327 Million in Fiscal Year 2015.

According to USDA's interpretation of the statute, the agency was only required to purchase $327 million worth of TEFAP food in fiscal year 2015.

Subparagraph (C) directs the USDA, for fiscal years 2010 through 2018, to spend

"the dollar amount . . . specified in subparagraph (B)"—$ 250 million—after it has been adjusted by the same percentage as the USDA's thrifty food plan. 7 U.S.C. § 2012(u)(4) adjusts the cost of the plan for inflation every year, so this ensures that the TEFAP baseline amount for 2010 through 2018 is adjusted to account for annual inflation. For fiscal year 2015, both parties agree that $277 million was the proper adjusted total. Mem in Supp. of Defs.' Mot. to Dismiss at 7; Opp'n to Mot. to Dismiss at 5 [Dkt. # 15].

According to USDA, subparagraph (D) simply instructs the agency, from 2015 to 2018, to augment the baseline amount with an additional amount that ranges from $50 million in 2015 to $15 million in 2018. Following this interpretation, USDA spent $327 million on TEFAP in fiscal year 2015.[3]

**B. Bread for the City's Theory: $604 Million in Fiscal Year 2015.**

Unlike USDA, Bread for the City believes that § 2036(a)(2) required the agency to spend $604 million[4] in fiscal year 2015, and believes that USDA therefore failed to purchase $277 million worth of TEFAP commodities in 2015. As an initial matter, Bread for the City agrees with USDA that subparagraph (C) required the agency to spend $277 million in 2015. However, the organization believes that USDA had to spend that $277

[3] USDA's calculations are summarized as follows:

- Subparagraph (C): $250 million, adjusted for inflation= $277 million
- Subparagraph (D)(i): + $50 million
- FY 2015 Total TEFAP Expenditure: = $327 million

[4] In its Complaint, Bread for the City alleges that USDA should have spent $602 million in 2015. Compl. ¶ 27. However, under Bread for the City's theory, the proper total is $604 million, and its brief in opposition correctly uses that amount. *See, e.g.*, Opp'n to Mot. to Dismiss at 5. At the time it drafted the Complaint, Bread for the City may not have known the exact inflation adjustment that established $277 million as the baseline amount, or it may have simply made an arithmetical error. I shall treat $604 million as Bread for the City's proposed TEFAP total for 2015.

million *twice*, once in order to comply with subparagraph (C) and again to comply with subparagraph (D). Subparagraph (C) instructs USDA to use $277 million, and subparagraph (D) instructs the Secretary to use the "sum obtained by adding the total dollar amount . . . specified in subparagraph (C) [$277 million] and . . . for fiscal year 2015, $50,000,000." According to Bread for the City, each subparagraph creates an independent, unconnected obligation to spend $277 million. Subparagraph (D)'s reference to the "total dollar amount . . . specified in subparagraph (C)" is not merely a reference connecting the two subparagraphs together, but a new and independent command to count that $277 million all over again.[5] I disagree.

In order to determine § 2036(a)(2)'s meaning, I begin with the statute's text. *United States v. Nice*, 769 F.3d 1154, 1160 (D.C. Cir. 2014); *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed.").

Bread for the City relies on three main textual arguments to support its double-counting thesis. First, it argues that each subparagraph in § 2036(a)(2) is joined by an implicit "and" that renders each subparagraph cumulative. Second, Bread for the City argues that the use of the word "sum" in subparagraph (D) is rendered meaningless unless USDA double-spends the $277 million identified in (C). Last, Bread for the City points out that fiscal years 2015 through 2018 are referred to in two separate subparagraphs and

[5] Bread for the City's calculations are summarized as follows:

- Subparagraph (C): $250 million, adjusted for inflation= $277 million
- Subparagraph (D): $277 million + $50 million= + $327 million
- FY 2015 TEFAP Expenditure: $604 million

concludes that each subparagraph constitutes a separate, freestanding obligation to spend $277 million in those years. All three, in my judgment, are too clever by half. How so?

In essence, plaintiff's arguments ignore the statute's structure, distort its clear meaning, and ultimately lead to a tortured reading of the statute. As an initial matter, the implicit "ands" between subparagraphs cannot reasonably be interpreted to create a cumulative, additive effect between subparagraphs. Other than (C) and (D), § 2036(a)(2)'s subparagraphs address mutually exclusive time periods. For example, subparagraph (A) addresses 2008, and (B) addresses 2009. If the "and" connecting those subparagraphs is truly cumulative, then (B) commands the USDA to spend $250 million in 2009, *plus* the $190 million already identified in (A), for a total of $440 million. This interpretation creates a rapid and unsustainable snowballing effect that neither party advances. Bread for the City attempts to sidestep this problem by arguing that the "and" between subparagraphs is always cumulative, but has no practical effect when subparagraphs address different fiscal years. Opp'n. to Mot. to Dismiss at 6. However, they contend that because (C) and (D) are the only subparagraphs that refer to partially overlapping fiscal years (i.e., 2015–2018), the "and" connecting them is the only one that has consequence and must therefore be read as a plus sign. Please!

In effect, Bread for the City is asking this Court to interpret "and" to have a different meaning between (C) and (D) than it does elsewhere in the statute. Recognizing "the established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning," I decline to do anything else here. *Janko v. Gates*, 741 F.3d 136, 141 (D.C. Cir. 2014) (quoting *Nat'l Credit Union*

*Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998)). Instead, the implicit "and" must be read consistently through the text as a simply connective term that relates provisions together, rather than as an arithmetical command. *See And*, *Oxford English Dictionary* (2d ed. 1989) (offering definition of "and" as "simply connective").

Furthermore, I easily reject Bread for the City's argument that the word "sum" in subparagraph (D) is rendered meaningless unless USDA *double* counts the $277 million specified in subparagraph (C). Put simply, a "sum" is nothing more than an amount resulting "from the addition of *two* or more numbers." *Sum, Oxford English Dictionary* (2d ed. 1989) (emphasis added). Even under the USDA's interpretation, the USDA was required in fiscal year 2015 to add two dollar amounts together ($277 million + $50 million), so a "sum" is required under either party's reading of the statute.

Bread for the City responds that if Congress wanted USDA to count the $277 million only one time, it would have drafted subparagraph (D) to state that USDA should spend $50 million "*in addition* to the total dollar amount . . . specified in subparagraph (C)," rather than stating that USDA should use the "*sum obtained by adding* the total dollar amount specified in (C) . . . [and $50 million.]" I disagree. Although Bread for the City may have proposed a marginally clearer way for Congress to express its meaning, it does not necessarily follow that Congress's choice of the word "sum," rather than "in addition to," alters the statute's meaning. My role is not to nitpick the Congress's choice of words, but to determine the meaning of the words it in fact chose. And I simply cannot discern how Congress's use of the word "sum" commands USDA to double-count the $277 million. To do so would, in effect, rewrite the statute.

Not exactly the proper role for the judiciary!

Ultimately, Bread for the City's textual argument rests on the fact that subparagraphs (C) and (D) both address fiscal years 2015 through 2018, and both include a reference to the inflation-adjusted $250 million. Subparagraph (C) tells USDA to use an inflation-adjusted $250 million from 2010 to 2018, and (D) tells USDA to use the "amount . . . specified in subparagraph (C)" from 2015 to 2018. According to Bread for the City, the double reference somehow requires double counting. *See* Opp'n. to Mot. to Dismiss at 5. Despite its superficial simplicity, that argument ignores the statute's structure. Section 2036(a)(2)'s subparagraphs build upon one another successively; they are replete with cross-references to one another, and the meaning of most subparagraphs cannot be understood without referring to the previous subparagraph. For example, subparagraph (C) instructs USDA to adjust the "dollar amount . . . [previously] specified in subparagraph (B)," and subparagraph (E) takes as its starting point "the total dollar amount . . . [previously] specified in subparagraph (D)(iv)." The same thing occurs in subparagraph (D), which refers the reader to the "total dollar amount . . . specified in subparagraph (C)" in determining the TEFAP total for 2015 to 2018.

Bread for the City's argument ignores this pattern of successively building upon prior subparagraphs and argues that subparagraph (D)'s reference to the "amount . . . specified in subparagraph (C)" is somehow a second, unrelated command to spend that $277 million all over again. Subparagraph (D)'s reference back to (C) connects the two subparagraphs together. From 2010 to 2018, USDA should always spend an inflation-adjusted $250 million on TEFAP. From 2015 to 2018, (D) establishes

that the adjusted $250 million remains necessary, but is no longer sufficient; USDA must instead include the additional amount specified in (D)(i–iv).

### C. The Relevant Legislative History Dispels Any Doubt About the Clarity of 7 U.S.C. §2036(a)(2).

Finally, to the extent that Bread for the City's Complaint creates any doubts about the clarity of § 2036(a)(2)'s text, an even cursory glance at its legislative history resolves any question about the correctness of USDA's interpretation. Although their text and structures varied slightly from the enacted statute, the House and Senate bills that led to § 2036(a)(2) both established a baseline amount of $265 million, accounted for inflation adjustment, and instructed USDA to add a discrete but gradually diminishing amount to the baseline over the next four years. *See* H.R. 2642, 113th Congress. § 4016, Engrossed Amendment Senate (July 18, 2013), https://www.congress.gov/113/bills/hr2642/BILLS-113hr2642eas.pdf; H.R. 2642, 113th Cong. § 4027, Engrossed Amendment House (Sept. 28, 2013), https://www.congress.gov/113/bills/hr2642/BILLS-113hr2642eah.pdf. Neither bill instructed USDA to double the baseline amount, nor did the conference report contain any indication that the conference committee intended to alter the spending schedule to require double-counting. Instead, the report corroborated USDA's interpretation of the statute and explicitly stated that the amended bill "provide[d] an increase in funding of $50 million for fiscal year 2015, $40,000,000 for fiscal year 2016, $20,000,000 for fiscal year 2017, and $15,000,000 for fiscal year 2018." H.R. Rep. No. 113-333, at 440 (2014) (Conf. Rep.), https://www.congress.gov/113/crpt/hrpt333/CRPT-113hrpt333.pdf. While Congress may be regularly criticized for how it spends the

taxpayers' funds, it is certainly not known, thank goodness, for miswriting statutes to obtusely authorize—if not mandate—the expenditure of hundreds of millions of unappropriated funds.

**CONCLUSION**

For all of the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge